UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

_____

No.   21-10965-D

_____

GREGORY GAFFNEY,

Appellant,

v.

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, ET AL.,

Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

_____

ANSWER BRIEF OF APPELLEES

_____

ASHLEY MOODY
ATTORNEY GENERAL

ALLISON LEIGH MORRIS
ASSISTANT ATTORNEY GENERAL
FLORIDA BAR NO.   0931160
444 Seabreeze Boulevard,   5th Floor
Daytona Beach, FL    32118
(386) 238-4990/Fax (396)238-4997
Allison.morris@myfloridelegal.com
crimappdab@myfloridalegal.com

COUNSEL FOR APPELLEES

Gaffney v. Secretary, Florida Department of Corrections, et al.,
Case no. 21-10965-D

CERTIFICATE OF INTERESTED PERSONS

AND CORPORATE DISCLOSURE STATEMENT

Those persons having an interest in the outcome of the case are as follows:

"A.R.", the mother of "K";

Bain, Andrew, State Attorney, Ninth Judicial Circuit, Florida;

Bankowitz, Karen, (former) Assistant State Attorney, Ninth Judicial Circuit

Berger, Wendy, District Court Judge, Middle District of Florida, Orlando Division;

Busch, William, (former) Assistant State Attorney, Ninth Judicial Circuit;

Davila, Luis, Post-conviction Counsel;

Desrochers, Christopher, Defense Counsel;

Dixon, Ricky, Secretary, Florida Department of Corrections;

Gaffney, Gregory (Gaffney);

Grosshans, Jamie, Justice, Florida Supreme Court;

C-1 of 2

Holtz, Kevin, (former) Assistant Public Defender;

"K", victim;

Lambert, Brian, Judge, Fifth District Court of Appeal, Florida;

Lubet, Mark, Judge, Circuit Court, Ninth Judicial Circuit;

Maxwell, Kevin, Defense counsel at trial;

Morris, Allison, Assistant Attorney General;

Moody, Ashley Brooke, Elected Attorney General, State of Florida;

Roche, Renee, Judge, Circuit Court, Ninth Judicial Circuit;

Sawaya, Thomas, Senior Judge, Fifth District Court of Appeal, Florida;

Sharp, G. Kendall, Senior United States District Court Judge, Middle District of Florida, Orlando Division; and

Van Hassteren, Mark, Asst. Regional Conflict Counsel.

## STATEMENT REGARDING ORAL ARGUMENT

This is an appeal from the denial of a federal habeas petition as to one claim of ineffective assistance of trial counsel which the district court judge found to be without merit.   The issue is straight forward and is not complex.   Oral argument will not enhance this court's determination of the issue and is unnecessary in the instant case.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . .C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    COURSE OF PROCEEDINGS BELOW . . . . . . . . . . . . . . . . . . . . . . . . . 1

    STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT ON APPEAL

Whether the state post-conviction court unreasonably found that Gaffney's counsel was not deficient, and Gaffney was not prejudiced, where counsel failed to introduce potentially exculpatory e-mails from a significant witness at trial?

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>TABLE OF AUTHORITIES</u>

<u>CASES</u>:

<u>Alvarado-Contreras v State</u>,

    305 So. 3d 842 (Fla. 2nd DCA 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Chandler v. United States</u>,

    218 F. 3d 1305, 1315 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Cullen v. Pinholster</u>,

    563 U.S. 170 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Davis v. Jones</u>,

    506 F. 3d 1325 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Evans v. Secretary, Florida Department of Corrections</u>,

    699 F. 3d 1249 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

<u>Gaffney v State</u>,

    214 So. 3d 714 (Fla. 5th DCA 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Gaffney v State</u>,

    272 So .3d 1286 (Fla. 5th DCA 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Gore v. Secretary, Florida Department of Corrections</u>,

    492 F.3d 1273 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Grossman v. McDonough,

    466 F. 3d 1325 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Harrington v. Richtor,

    562 U.S. 86 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Helms v State,

    271 So. 3d 1030 (Fla. 4th DCA 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lockhart v. Fretwell,

    506 U.S. 364 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Putman v. Head,

    268 F. 3d 1223 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Renico v. Lett,

    559 U.S. 766 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Strickland v. Washington,

    466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Suggs v. McNeil,

    609 F. 3d 1218 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tanzi v. Secretary, Florida Department of Corrections,

    772 F. 3d 644 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Virginia v. LeBlanc,

  582 U.S. 91 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

OTHER AUTHORITIES:

Section 90.608, Florida Statutes (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 USC §2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATEMENT OF JURISDICTION

This case involves an appeal from the denial of a federal habeas petition. This court has jurisdiction pursuant to 28 U.S.C. § 2253.

## STATEMENT OF THE ISSUE PRESENTED

Whether the district court erred in finding that Gaffney's counsel was not deficient, and that he was not prejudiced, where counsel failed to introduce potentially exculpatory e-mails from a significant witness at trial?

## STATEMENT OF THE CASE

### COURSE OF PROCEEDINGS BELOW

On January 14, 2011, Gaffney went to trial on four counts of lewd and lascivious molestation.1   K's younger sister testified she was sexually molested but then was unable to recall anything else. (Dkt. # 16 B 298-315, 308 310-311).   The trial court granted a motion for judgment of acquittal on the charges related to K's younger sister. (Dkt. # 16 B 546-547).   K testified at length as to Gaffney being the perpetrator, and the jury convicted him of the remaining charges.   (Dkt. #16 A 61-62, 118-119,   On May 11, 2011, he was sentenced as a Prison Releasee Reoffender to two life sentences.   (Dkt. #16 A 193-194).

---

1 The child victim will be identified as "K", her brother will be identified as "M", the victim's mother will be identified as "A.R".

On January 8, 2013, and March 5, 2015, Gaffney filed a motion for post-conviction relief claiming nine instances of ineffective assistance of trial counsel including his present claim that defense counsel failed to impeach K's mother with two e-mails she sent to Gaffney.   (Dkt. #16 F 749-798, 835-852).   On March 25, 2015, the post-conviction court summarily denied most of the claims, including the present one.   After holding two evidentiary hearings, it denied the remaining claims. (Dkt. #16 F 855-888, 970-976, 1467-77).   The Fifth District Court of Appeal affirmed the post-conviction court's denial of relief.   Gaffney v. State, 214 So. 3d 714 (Fla. 5th DCA 2017);   Gaffney v. State, 272 So. 3d 1286 (Fla. 5th DCA 2019).

On October 16, 2019, Gaffney filed a second amended petition for writ of habeas corpus arguing the state court erred in finding that defense counsel did not render ineffective assistance of counsel or that he was prejudiced by counsel's performance.  (Dkt. #10).   On April 1, 2020, the State of Florida filed a response. (Dkt. #15).    On October 13, 2020, Gaffney filed a reply.   (Dkt. #23).   On February 19, 2021, the Middle District Court of Florida dismissed the petition with prejudice and denied the certificate of appealability.   (Dkt. #24, 25, 38).   The federal court agreed with the state court's findings that the e-mails were not admissible as extrinsic evidence if A.R. denied making the statements, and that there was no evidence they could be authenticated. Gaffney sought a certificate of

appealability from the Eleventh Circuit Court of Appeals.   On April 4, 2022, this Court granted it on the following question: "Whether the state post-conviction court unreasonably found that Gaffney's counsel was not deficient, and Gaffney was not prejudiced where counsel failed to introduce potentially exculpatory e-mails from a significant witness at trial?"   (Dkt. #39).

STATEMENT OF THE FACTS

TRIAL PROCEEDINGS:

The victim K (age 7 at time of trial) lived in a three-bedroom house with her mother (A.R.), her mother's boyfriend (Dave Owens), her five siblings (ages 6, 6, 7, 10 & 11), and Owens' 21-year-old son (Zach). (Dkt. #16 B 261-263, 316).   She and her younger siblings shared a large bed in one bedroom, Zach slept in the second bedroom and A.R. and Owens shared the third bedroom.   (Dkt. #16 B 265-266, 271).

From May to August 2009, Gaffney, a family friend, spent a lot of time at the house, coming over at all hours of the day and night. (Dkt. #16 B 267-268, 328). A.R. would hear his Bronco, and then he would either knock or just come in.   (Dkt. #16 B 326).   He came over so frequently, about 15 times throughout the summer, that their dog Bella did not bark at him. (Dkt. #16 B 328).    One night Dave Owens found him sleeping in the children's room.   (Dkt. #16 B 328, 369).   M, A.R.'s

second oldest son, saw Gaffney in the bedroom he shared with his siblings two or three times over the summer. (Dkt. #16 B 3788).   In July 2009, K complained that her stomach hurt and she was treated for kidney issues.  (Dkt. #16 B 33).   Her behavior changed during this time period where she became withdrawn.   (Dkt. #16 B 333).

August 10, 2009, K disclosed to her brother M and then to her mother, that Gaffney had sexually molested her.   (Dkt. #16 B 278, 360).   She described him as lying down next to her, pulling her close, and putting her hand on his penis.   (Dkt. #16 B 274-276).   A.R., with Zach's girlfriend, went into the bedroom and found that K's vagina was red, swollen and had a discharge.   (Dkt. #16 B 337).

K told A.R. about a second incident where Gaffney touched her vagina which occurred about a week earlier than the molestation disclosed on August 10, 2009. (Dkt. #16 B 276, 277, 338, 342).   A.R. recalled that night she heard Gaffney's Bronco outside, and the next day their dog got kicked in the face by Gaffney.   (Dkt. #16 B 371).   M recalled seeing Gaffney in their room around 3 a.m., and then he went back to sleep.   (Dkt. #16 B 379).   The next morning, he saw K with "bad hair" and her Pull-Up undone on one side.   (Dkt. #16 B 381-382).

K repeatedly stated that she knew it was Gaffney who touched her because she saw his face.   (Dkt. #16 B 278-279).   She knew it was not one of her brothers

4

because they would never do that to her, and the person looked and sounded like Gaffney, not her brother.   (Dkt. #16 B 283).

M recalled the day because it was the day Gaffney kicked the dog.   He recalled Gaffney washing the sheet from his bed because it had a stain which M was certain was not a urine stain.   (Dkt. #16 B 382-383).   A.R. would do most of the laundry, although her middle son or Zach would help.   (Dkt. #16 B 330).

Immediately after the August 10, 2009, disclosure, A.R. contacted K's doctor who referred them to Health Central, which in turn contacted law enforcement. (Dkt. #16 B 343). Officer Curtis Stewart arrived at the hospital at 3:47 p.m. and interviewed K alone.   (Dkt. #16 B 404).   She told him that Uncle Greg had touched her vagina and referenced more than one instance. (Dkt #16 B 407, 413).

Detective Christopher Dillon was assigned to the case on August 11, 2009, and scheduled for A.R. and K to be interviewed by the Child Protection Team (CPT) on August 17, 2009.   (Dkt. #16 B 420-421).   The morning of the CPT interview, A.R. found Gaffney outside of the house talking to K and her sister. (Dkt. #16 B 346, 349).   K testified that Gaffney told her that he did not do it and he was not in the bedroom.   (Dkt. #16 B 279, 280).

Linda Pedicone, the advanced nurse practitioner with the Child Protection Team, examined K on August 17, 2009, and described finding redness in the vaginal

5

area but nothing particularly abnormal. (Dkt. #16 B 475, 487, 497). Denise Friedrichs, the CPT senior case coordinator, interviewed K while Detective Dillon observed from another room. (Dkt. #16 B 422-423). K was very apprehensive about describing the molestations. (Dkt. #16 B 493, 510-511, 514, 518, 525-528). K told her that someone came into her room while she was sleeping and touched her. (Dkt. #16 B 528). K believed it was Gaffney because he sleeps in the room a lot, but also described having her eyes shut so she was not certain. (Dkt. #16 B 520). Gaffney had talked to her before the CPT interview and told her he was not in the room. (Dkt. #16 B 521, 524). She was not certain if Gaffney was the perpetrator, but was certain it was not her brother. (Dkt. #16 B 525-526). At trial, K clarified she was scared to tell the truth because Gaffney had told her right before the interview that he did not do it. (Dkt. #16 B 291, 294).

Detective Dillon reached out to Gaffney by phone on August 18, 2009. (Dkt. #16 B 424). Initially Gaffney refused to come in, and said he was in control, not the detective. (Dkt. #16 B 432). On August 31, 2009, the detective finally interviewed Gaffney who maintained that he never touched any of the children. (Dkt. #16 B 439). He acknowledged he would come and go from the house and slept there but denied ever sleeping in the children's room or doing laundry at the house. (Dkt. #16 B 440). He admitted to being at the house before the CPT

6

interview, and telling K and her sister he was going to buy them some new clothes and that he was not the person who molested them.   (Dkt. #16 B 441-442). Gaffney admitted to slapping the family dog because she peed on the children's bed, but that M washed the sheets.   (Dkt. #16 B 456).   He confirmed that A.R. gave information about the investigation to Gaffney before the interview.   (Dkt. #16 B 461).

POST CONVICTON PROCEEDING:

Gaffney's motion for post-conviction relief alleged trial counsel was ineffective for failing to impeach state witness A.R. with two e-mails she sent to the defendant stating her awareness that M had been molesting K and she was willing to lie to about Gaffney to protect her son from prosecution (Claim 9a).    (Dkt. #16 F 791-794).    The e-mails are dated, and state as follows:

August 16, 2009, 8:07 a.m.

> I JUST WANT TO GIVE YOU A HEADS UP THAT [K] HAS BEEN TOUCHED IN HER PANTS AND THERE IS AN INVESTIGATION GOING ON.  I KNOW YOU HAVENT BEEN HERE BUT ONE DAY IN THREE WEEKS, BUT WE HAD TO GIVE THE DETECTIVES YOUR NAME.  WHAT I HOPE IS THAT ITS NOT [M].

(Dkt. #16 F 803).

August 18, 2009, 11:49 p.m.

7

> EVEN THOUGH BABY GIRL SAID YOU DIDN'T TOUCH HER AND SHE DIDN'T KNOW WHO IT IS, YOU SHOULDN'T HAVE EVER MENTIONED I TALKED TO YOU.  DETECTIVE DILLAN WOULD REALLY FREAK IF HE KNEW THAT THE TWINS STAY CLINGED TO YOU THE WHOLE TIME YOUR AROUND.  THEY REALLY LOVE YOU GREG, AND YOU CAN TELL THAT THEY TRUST YOU COMPLETLY AND ADORE YOU, BUT DON'T THINK FOR A MINUTE I WOULDN'T LIE ON YOU TO KEEP MY CHILDREN.  ALWAYS KEEP THAT IN MIND.

(Dkt. #16 F 805).  The state post-conviction court summarily denied this claim for several reasons.  First, it found that it would not have been useful to impeach A.R. with the first e-mail because Detective Dillon already knew she had spoken with Gaffney prior to the CPT interview and there was no prior inconsistent statement from A.R.  (Dkt. #16 F 880-882).  The post-conviction court was suspicious of this e-mail because the victim's name was incorrectly spelled.  (Dkt. #16 F 880-882).  In the second e-mail, A.R. did not threaten to lie to authorities if Gaffney implicated her son M, "If anything, the second e-mail shows that on August 18, 2009, [A.R.] was confused and unsure as to what might have occurred; despite the multiple people the victim had already reported to that "Greg" had touched her." (Dkt. #16 F 791-793).  The post-conviction court also observed that the e-mails were not admissible as intrinsic evidence if A.R. denied sending them because there was no evidence that

they could be authenticated in order to introduce them into evidence.   (Dkt. #16 F

791-793).


STANDARD OF REVIEW

An appellate court reviews a district court's ruling on a petition for writ of

habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") de novo. Tanzi v. Secretary, Florida Department of Corrections, 772 F.

3d 644, 651 (11th Cir. 2014) (quoting Grossman v. McDonough, 466 F. 3d 1325,

1335 (11th Cir. 2006)). But this review is also "highly deferential" to the state court's

decision on the merits of a claim, and state courts should be given the benefit of the

doubt. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

If a state court has adjudicated the merits of a claim, a federal court may not

grant habeas relief unless the state court's decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. §2254(d); Davis v. Jones, 506 F.3d 1325, 1331 (11th

Cir. 2007). A state court unreasonably applies federal law when it "identifies the

correct legal rule from Supreme Court case law but unreasonably applies that rule to

the facts of the petitioner's case," or when it "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Suggs v. McNeil, 609 F. 3d 1218, 1227 (11th Cir. 2010) (internal quotation marks omitted). In determining unreasonableness, the reviewing court does not ask whether the state court decided an issue correctly, but only whether the court's decision was objectively unreasonable. Renico v. Lett, 559 U.S. 766, 772 (2010). A state court's decision rises to the level of an unreasonable application of federal law only where the ruling is "objectively unreasonable, not merely wrong; even clear error will not suffice." Virginia v. LeBlanc, 582 U.S. 91, 94 (2017). This "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a habeas proceeding." Evans v. Secretary, Florida Department of Corrections, 699 F. 3d 1249, 1268 (11th Cir. 2012). If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richtor, 562 U.S. 86, 102 (2011).

## SUMMARY OF ARGUMENT

<u>Point on Appeal</u>:   The district court judge properly determined the state courts reasonably applied <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in finding Gaffney's trial attorney did not render ineffective assistance of counsel for failing to introduce two e-mails that Gaffney alleges were potentially exculpatory.   The e-mails were not exculpatory and would not have been useful in impeaching the witness. Further, Gaffney cannot demonstrate that he was prejudiced by his counsel's alleged failure to do this. The state courts' rulings are entitled to double deference by the federal court, and Gaffney is unable to show they are objectively unreasonable. The dismissal of the amended petition should be affirmed in all respects.

<u>ARGUMENT</u>

<u>POINT ON APPEAL</u>

Whether the state post-conviction court unreasonably found that Gaffney's counsel was not deficient, and Gaffney was not prejudiced, where counsel failed to introduce potentially exculpatory e-mails from a significant witness at trial?

The district court properly denied habeas relief on Gaffney's claim that his attorney was ineffective for failing to impeach a state witness with two e-mails. The state court properly applied <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and its interpretation of the facts in light of <u>Strickland</u> is not objectively unreasonable. Thus, the denial of the amended petition should be affirmed in all respects.

<u>Strickland</u> establishes a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the <u>Strickland</u> test requires that the defendant demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. The second prong of the <u>Strickland</u> test requires the defendant to show that the deficient performance prejudiced the defense. Id. at 687. The prejudice prong of the test does not focus solely on mere outcome determination. <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

12

Rather, to establish prejudice a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

Whether counsel's performance fell below an objective standard of reasonableness is determined based on "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. Trial counsel's performance is entitled to a presumption of reasonableness, and to overcome that presumption the burden is on the defendant to show that "no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F. 3d 1305, 1315 (11th Cir. 2000). See also Putman v. Head, 268 F. 3d 1223, 1243 (11th Cir. 2001). The standard for judging counsel's representation is a most deferential one and establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. Harrington, 562 U.S. at 86. "Standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105 (citations and quotation marks omitted).

Presently, Gaffney was convicted of two counts of lewd and lascivious molestation of the child victim K. At trial, the following witnesses testified on behalf of the State of Florida: K; her mother A.R.; her brother M; Officer Curtis

Stewart, the responding officer; Detective Christopher Dillon, the investigating officer; Linda Pedicone, the CPT advanced nurse practitioner, and Denise Friedrichs, the CPT senior case coordinator.   (Dkt. # 16 B 298-315, 308 310-311, 546-547).   The State entered into evidence: the CPT's interview of K, Detective Dillon's interview of Gaffney, and two phone messages left by Gaffney.

According to the trial testimony, on the morning of August 10, 2009, K reported to her brother M and then to her mother A.R. that Gaffney, a family friend, had molested her.   A.R. immediately called her doctor who then advised her to go to Healthcare Central where Officer Stewart met with them.   Officer Stewart testified that K identified Gaffney when he met with her alone at the hospital on August 10, 2009.   (Dkt. #16 B 406).   He referred the case to Detective Dillon who scheduled an appointment with the Child Protection Team for August 17, 2009. Detective Dillon reached out to Gaffney and interviewed him on August 31, 2009. At trial, K identified Gaffney as the culprit (although she did not recognize him in the courtroom due to his significantly changed appearance). (Dkt. #16 B 267-268). A.R. and M testified K identified Gaffney when she made the August 10, 2009, disclosure.   (Dkt. #16 B 333).   During the CPT interview, K identified Gaffney, but then waivered on her identification.   (Dkt. #16 B 530-535).   Further questioning revealed this was because Gaffney had gone to her house the morning

14

before the CPT interview, offered to buy her new clothes and told her he did not do it.   (Dkt. #16 B 530-535).

Gaffney alleges that trial counsel was ineffective for failing to impeach A.R. with two e-mails that she sent him.   The e-mails were not admissible as evidence as they were hearsay, and not one of the exceptions enumerated in Section 90.801, Florida Statutes.   See Helms v State, 271 So. 3d 1030 (Fla. 4th DCA 2020). However, under Section 90.608, Florida Statutes, hearsay statements may be used to impeach inconsistent trial statements or to show the bias of the witness. Extrinsic evidence is admissible as collateral impeachment as "evidence which would discredit a witness by pointing out the witness's bias, corruption or lack of competency."   Alvarado-Contreras v State, 305 So. 3d 842 (Fla. 2d DCA 2020).

Gaffney asserts the first e-mail, dated August 16, 2009, showed that A.R. perjured herself when she testified that she did not know how Gaffney found out about the allegation.   A.R. testified that she did not disclose to Gaffney what K told her; however, she also testified that she spoke with him prior to the CPT interview on August 17, 2009, and when she returned home that evening.   (Dkt. #16 B 347, 349).   Detective Dillon testified that he was aware A.R. had spoken to Gaffney despite his request not to do so.   (Dkt. #16 B 461).   The e-mail simply stated that K had been touched inappropriately; neither e-mail disclosed that K named Gaffney.

15

Thus, the post-conviction court correctly determined, as the information was elicited through trial testimony, impeachment on this point "would not have affected the outcome of the trial." (Dkt. #16 F 1109).

Next, Gaffney asserts that the first e-mail showed that A.R. was aware that M was the culprit who molested K. As the state post-conviction court correctly found, there was no inconsistent statement from A.R. that this could have been used to impeach her. (Dkt. #16 F 1109). The e-mail did not identify M as the molester; it only showed she told Gaffney that K had not identified him, and she hoped that M was not the culprit. Her trial testimony was consistent with K's trial testimony that Gaffney was the molester and that she told A.R. on August 10, 2009. Further, K disclosed Gaffney's identity to a neutral third party (Officer Stewart) a week before the e-mail was ostensibly written. If questioned, A.R. would most likely explain the discrepancies in the e-mail as based on her effort to follow Officer Dillon's request that she not inform Gaffney regarding the status of the ongoing investigation. This would actually strengthen her credibility, not weaken it.

Gaffney alleges that the second e-mail, dated August 18, 2009, would have shown that Gaffney was allowed to be around the victim even after she reported the molestation. Rather, A.R. testified that Detective Dillon asked them not to let Gaffney become aware of the investigation, but it was very hard to do because he

16

kept coming over.   (Dkt. #16 B 146).   Further, she testified he was around them at the house immediately before the CPT interview and came over afterwards.   K also disclosed that Gaffney had been to the house prior to the CPT interview.   Thus, there was no reason to impeach her with the e-mail on this point because it was not inconsistent with her trial testimony.

Gaffney alleges the second e-mail showed that A.R. would implicate Gaffney to protect her son and showed A.R.'s motive to lie. The trial court ruled, "Defendant's purpose in trying to impeach A.R. with the alleged e-mail is to show inconsistencies in her testimony, but the e-mail does not articulate what Defendant claims it articulates."   (Dkt. #16 F, p. 28 of March 25, 2015, Order).   As it observed, there is no mention in it that A.R. threatened to lie to law enforcement if Gaffney went to the authorities to implicate M.   (Dkt. #16 F, p. 27 of March 25, 2015, Order).   Rather, it reflects her concern that Gaffney told law enforcement that A.R. had been in contact with him despite being instructed otherwise. Similarly, it does not show that A.R. had any motive to lie. If impeached with the e-mail, it would only show that she told Gaffney that the victim did not identify him when, at the time the e-mail was ostensibly written, she had identified Gaffney to M, A.R., Officer Stewart, and Denise Friedrichs.   She could explain any discrepancy between the trial testimony and the e-mail as her effort to comply with Detective Dillon's

request that she not tell Gaffney about the ongoing investigation.

The trial court's conclusion that there was no basis to impeach A.R. with the two e-mails is not unreasonable. It pointed specifically to the trial transcript in support of its finding. The Middle District Court agreed that the e-mails could not have been used to impeach a prior inconsistent statement because A.R. did not testify she suspected another individual of the molestation. (Dkt. #24). Gaffney cannot show that no reasonable jurist would disagree with this conclusion.

Gaffney argues that defense counsel should have used the e-mails together to show motive to lie and bias, e.g., A.R. was willing to lie about Gaffney to protect the real culprit he identifies as M. However, each e-mail must be considered within the context of the other events that occurred and the time they were written. On August 10, 2009, K disclosed the abuse and named Gaffney as the abuser to her mother and brother. That same day she named Gaffney to Officer Stewart outside of the presence of her mother and family members. The CPT interview was scheduled for August 17, 2009. On August 16, 2009, A.R. ostensibly sent the first e-mail letting Gaffney know that his name was given as a possible suspect. The very next day prior to the CPT interview Gaffney went to the residence and talked to K and her sister, told them he was not the perpetrator, and offered to buy them new clothes. That afternoon, K told the CPT investigator that she believed that

Gaffney was her assailant, but also was not sure because her eyes were closed.    The next morning, Detective Dillon reached out to Gaffney who refused to come in and told the detective he was in control, not the detective.    The second e-mail was sent that evening.    Finally, Gaffney was interviewed by Detective Dillon on August 31, 2009.

In the first e-mail, the mention of M is better construed as a deflection because A.R. already knew that K had identified Gaffney as her assailant.    She was simply trying to give Gaffney a heads up that he was a suspect without letting him know K had actually named him.    The e-mail does not suggest that she truly believed M was the culprit.    It definitively does not state that she was going to blame Gaffney to protect M.    The e-mail would not have been helpful to Gaffney's defense because he responded to it by going to K's house, telling her he did not do it, and offering to buy her some clothes.

The second e-mail, sent after the CPT interview, suggests that A.R. was upset with Gaffney for telling Detective Dillon that she had communicated to Gaffney that he was a possible suspect.    The e-mail does not say that she was going to lie and accuse Gaffney in order to protect M.    It gives no context about what she would lie about.    It does not read, and should not be interpreted to read, as A.R. threatening to lie and name Gaffney as the suspect if he tried to implicate M.

Further, the state court held that the e-mails were not admissible as extrinsic evidence because Gaffney offered no evidence he would have been able to authenticate them as a business record.  (Dkt. #16 F, p. 28 of March 25, 2015, Order).   The Middle District Court agreed: "The e-mails are not part of a business record certified by yahoo.com.   Therefore, if A.R. denied sending the e-mail, there is no evidence that the e-mails could be authenticated in order to introduce them into evidence to prove the statements were made."  (Dkt. #24).   Gaffney argues the State court's conclusion was unreasonable because e-mails are easy to authenticate, and courts do this all the time.   However, the state court's conclusion that there was no evidence adduced regarding authentication is a factual finding to which the Middle District Court correctly gave due deference.   Evans, 699 F. 3d at 1268.

Similarly, Gaffney is unable to show that the post-conviction court's conclusion that Gaffney was not prejudiced by trial counsel's decision not to impeach A.R. with the e-mails or use them to show her bias and motive to lie was unreasonable.   Even if the e-mails were used to impeach A.R., there is no reasonable probability that the outcome of the trial would have been different.   The victim never reported anyone besides Gaffney as the person who molested her.   She, her brother, her mother, and Officer Stewart testified she identified Gaffney as her

molester the day she reported it on August 10, 2009.  (Dkt. #16 B 129-130, 133, 197).  K never suggested that her brother was the culprit; rather, she specifically stated that it was not one of her brothers.  (Dkt. #16 B 68, 73, 78, 326).  Hours before the CPT interview, Gaffney showed up to the house, told K and her sister he did not do it, and offered to buy them some new clothes.    (Dkt. #16 B 69-71, 136, 219, 231).  During the CPT interview, K assumed Gaffney was her molester, but then expressed some uncertainty because of Gaffney's visit hours earlier.   (Dkt. #16 B 320-321).  At trial, K was clear that Gaffney was the culprit, and explained she was scared at the CPT interview.   The trial testimony established Gaffney came and left the house as he pleased, including in the middle of the night.   Most important, at trial, K repeatedly identified Gaffney as her molester, and never pointed to anyone else.   Nothing in the e-mails impeached K who was the only person who had firsthand knowledge of what occurred.   A.R.'s testimony was consistent with the timeline as established by M's testimony, the law enforcement officers, and the CPT team.   A.R.'s testimony could be wholly excused from the trial without reducing the strength of the State's case.   Thus, even if this Court rejects the trial court's finding that trial counsel was not deficient, the lack of prejudice was clearly shown.

Under 28 USC § 2254(e)(1), a determination by a state court shall be presumed correct and the federal habeas petition must rebut this presumption by

clear and convincing evidence.    <u>Gore v. Secretary, Florida Department of Corrections</u>, 492 F.3d 1273 (11th Cir. 2007).    The state court's ruling is entitled to double deference, and Gaffney has not shown that any of the state court's findings were clearly erroneous.    Gaffney is unable to show that there are any reasonable jurists who would disagree with the state court's finding that Gaffney is unable to demonstrate either deficient performance or resulting prejudice based on the fact defense counsel did not impeach A.R. with the two e-mails. The district Curt properly denied the challenge to the finding of the State court and this Court, too, should apply double deference and affirm the District Court's denial of this claim.

<u>CONCLUSION</u>

Based upon the arguments and authorities presented herein, Appellee respectfully requests this court affirm the district court's conclusion that Gaffney has failed to demonstrate the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

 /s/ Allison Leigh Morris
ALLISON LEIGH MORRIS
Assistant Attorney General
FLORIDA BAR NO.   931160
444 Seabreeze Blvd., 5th Floor
Daytona Beach, FL    32118
Phone (386)238-4990
Fax (386)238-4997
Allison.morris@myfloridalegal.com
crimappdab@myfloridalegal.com

COUNSEL FOR APPELLEES

23

CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Federal Rule of Appellate Procedure 32(a)(5) and (a)(7)(A) that the font used in this brief is Times New Roman, 14 point, and the word count is 7047.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Answer Brief of Appellees was electronically filed on November 13, 2023, and sent to Christopher Desrochers, Attorney for Appellant, 2504 Ave. G NW, Winter Haven, FL 33880 by e-mail at cadlawfirm@hotmail.com.

 /s/ Allison Leigh Morris
ALLISON LEIGH MORRIS
Assistant Attorney General