UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

_____

Case No. 21-10965-D

_____

GREGORY GAFFNEY,

Appellant,

v.

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, ET. AL.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

_____

REPLY BRIEF OF APPELLANT

_____

Christopher A. Desrochers, Esq.
Christopher A. Desrochers, P.L.
2504 Ave. G NW
Winter Haven, FL 33880
(863) 299-8309/Fax (863) 591-3236
Designated Email: cadlawfirm@hotmail.com

APPOINTED COUNSEL FOR APPELLANT

No. 21-10965-D
Gregory Gaffney v. Secretary, Florida Department of Corrections, et. al.

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and local rules of this Circuit, Christopher A. Desrochers, Esq., Counsel for the Appellant, Gregory Gaffney, hereby submits the following list of persons and entities that counsel believes is interested in the outcome of the proceedings, as well as those persons and entities that are required to be disclosed by rule:

Ricky D. Dixon, Secretary, Florida Department of Corrections.

Gregory Gaffney, Appellant.

"K", the complaining witness at the trial level.

Amanda Raymond, parent of "K".

Ashley Moody, Attorney General, State of Florida.

Allison Leigh Morris, Assistant Attorney General, State of Florida.

G. Kendall Sharp, Senior United States District Judge, Middle District of Florida.

Monique Worrell, State Attorney, Ninth Judicial Circuit, in and for Orange County, Florida.

Christopher A. Desrochers, Esq., counsel for Appellant.

Christopher A. Desrochers, P.L.

Any person or entity listed on a Certificate of Interested Persons and Corporate Disclosure Statement that was filed by another party to this action, and is not included in this Certificates of Interested Persons and Corporate Disclosure Statement.

One or more Certificates of Interested Persons and Corporate Disclosure Statement have been previously filed by the Appellant in this matter as a separate document on or about May 3, 2021 and July 26, 2023 (Doc. 8; 44) and as part of the Appellant's original Initial Brief (Doc 29, pg. ii), and are supplemented by this certificate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS                C1

TABLE OF CONTENTS                                 i

TABLE OF AUTHORITIES                             iv

ARGUMENT IN REPLY                                 1

POINT IN REPLY ONE                                1

>   THE AUTHENTICATION ISSUE ARGUED IN THE STATE'S ANSWER BRIEF MISCHARACTERIZES THE APPROPRIATE STANDARD OF REVIEW AND IMPROPERLY SHIFTS THE BURDEN OF PROOF AND THE BURDEN OF GOING FORWARD TO MR. GAFFNEY.

POINT IN REPLY TWO                                5

>   THE ATTEMPT BY THE STATE IN ITS ANSWER BRIEF TO REBRAND MR. GAFFNEY'S BIAS/MOTIVATION TO LIE ARGUMENTS AS A PRIOR INCONSISTENT STATEMENT ARGUMENT IS INCORRECT AND IS NOT WHAT MR. GAFFNEY ARGUED IN HIS INITIAL BRIEF.

CERTIFICATE OF COMPLIANCE          10

CERTIFICATE OF SERVICE             10

TABLE OF AUTHORITIES

CASES

Harris v. State, 204 So. 3d 973 (Fla. 2d DCA 2016).   2

Mancebo v. State, 931 So. 2d 928 (Fla. 3d DCA 2006).   2

Smalls v. State, 18 So. 3d 606 (Fla. 1st DCA 2009).   3

ARGUMENT IN REPLY

POINT IN REPLY ONE

>THE AUTHENTICATION ISSUE ARGUED IN THE STATE'S ANSWER BRIEF MISCHARACTERIZES THE APPROPRIATE STANDARD OF REVIEW AND IMPROPERLY SHIFTS THE BURDEN OF PROOF AND THE BURDEN OF GOING FORWARD TO MR. GAFFNEY.

In its answer brief, the State makes much of the idea that Mr. Gaffney somehow did not prove up the authenticity of the emails in question in his original 3.850 motion submitted in state court. Specifically, the State argues that

> [T]he state court's conclusion that there was no evidence adduced regarding authentication is a factual finding to which the Middle District Court correctly gave due deference.
>
> (Doc. 55 at Pg. 29.)

However, their argument misses the point and, worse, mischaracterizes the standard of review that is applicable in this case.

It is important to remember that Mr. Gaffney's 3.850 motion as to the issue presented on the Certificate of Appealability was summarily denied without a hearing.

As aptly pointed out in Harris v. State:

> The standard of review of a summary denial of a rule 3.850 motion is de novo. To uphold the summary denial, the claims must be either facially invalid or conclusively refuted by the record.
>
> 204 So. 3d 973, 974 (Fla. 2d DCA 2016).

Stated another way, an appellate court "must reverse the summary denial of a postconviction motion unless the record shows conclusively that the appellant is not entitled to relief." See Mancebo v. State, 931 So. 2d 928, 929 (Fla. 3d DCA 2006). Thus, at the summary review stage, it is not Mr. Gaffney's burden to show that he is entitled to relief. Rather to grant a summary denial (as opposed to ordering an evidentiary hearing on the issue), it is the burden of the State and the court to conclusively establish Mr. Gaffney is not entitled to relief on that issue. This is not a "finding of fact" that must be given deference. Rather, the trial court must make a showing of record evidence that conclusively refutes the claim, which is subject to de novo review by this Court. See Harris, 204 So. 2d at 974.

In this instance, it was clearly and blatantly insufficient for either the State court or the District Court (or the Appellee) to simply conclude that Mr. Gaffney made no showing of how he was going to authenticate two emails that were clearly from Yahoo.com. Indeed shifting the burden of proof and the burden of going

forward to Mr. Gaffney clearly violates <u>Harris</u> and <u>Mancebo</u>, which clearly require the State and the state court conclusively disprove Mr. Gaffney's claims to grant a summary denial. In summary denials, the State and the court must go forward and show conclusive proof from the record.

    Instead, if the lower courts and the Appellee wanted to focus on what really mattered on the authentication issue, they would have focused their attention on bringing forth record evidence and proof that would conclusively establish that it would have been impossible for Mr. Gaffney to have ever authenticated two emails from Yahoo.com. Of course, that record evidence does not exist because the two emails were never even proffered into evidence in the state court case. That is essentially the essence of Mr. Gaffney's complaint: the emails were never offered into evidence and that was ineffective assistance of counsel. Plus, creating documents to refute the claim (such as affidavits or the submission of outside-the-record evidence) does not work, will not substitute for an evidentiary hearing, and will not justify summary denial of a 3.850 motion. <u>See</u> <u>Smalls v. State</u>, 18 So. 3d 606, 608 (Fla. 1st DCA 2009). Because the emails were never even proffered into evidence, the authentication issue never became an issue on the record. As a result, it is impossible to refute the authentication issue conclusively based on record items.

    Further, common sense dictates that it should be easy to authenticate the emails

3

at the upcoming 3.850 evidentiary hearing. Yahoo! is a well-known internet search engine and email provider, and Yahoo!'s own emails can be easily authenticated by Yahoo! as business records. Any jurist with experience in either child pornography or white collar internet fraud cases knows how easy it is to verify and authenticate emails and other transmissions going to and coming from email addresses; especially ones from giant companies like Yahoo!. As a result, one cannot come to the legal or common-sense conclusion that it would be conclusively impossible to verify and authenticate a Yahoo.com email.

In its argument, the State (and the lower courts by inference) have demonstrated how the application of the law to the facts of this case were absolutely unreasonable. The State, in its answer brief, never once attempts to claim that it is impossible to authenticate an email from Yahoo.com, or that the trial court or the District Court ever offered anything from the trial court record that would conclusively establish the emails could never be authenticated. Rather, the State uses a "factual deference" argument, but 1) never states the facts to which this Court is supposed to "defer"; and 2) used the wrong legal standard anyway. That is because there are no facts, and common sense dictates that emails from Yahoo.com can be easily authenticated.

As a result, the whole "authentication" issue is, at its best, a red herring. At its

worst, it is a clear demonstration of how off-base the 3.850 court, the District Court, and the Appellee went in trying to summarily deny Mr. Gaffney an evidentiary hearing on his 3.850 motion as to this issue.

POINT IN REPLY TWO

> THE ATTEMPT BY THE STATE IN ITS ANSWER BRIEF TO REBRAND MR. GAFFNEY'S BIAS/MOTIVATION TO LIE ARGUMENTS AS A PRIOR INCONSISTENT STATEMENT ARGUMENT IS INCORRECT AND IS NOT WHAT MR. GAFFNEY ARGUED IN HIS INITIAL BRIEF.

In its answer brief, the Appellee spends most of Pages 15 and 16 of its answer brief discussing how the two emails in question really were not prior inconsistent statements. (Doc 55. Pg. 24-25). While this is interesting, it is also irrelevant. Mr. Gaffney has not argued the emails' use as prior inconsistent statements in his initial brief. Mr. Gaffney argued in his initial brief that the real issue in this case and the real use of the emails is to establish bias and motivation to lie. The bias and motivation to lie in this case extended to at least one of the most critical witnesses in the State's case, and arguably, extended its tendrils to two other critical state witnesses, including the complaining witness herself.

While it is comfortable to rebrand the bias/motivation to lie usage of the emails as "prior inconsistent statements", it is also incorrect and misses the point of the absolute value of these emails in the defense of Mr. Gaffney in this case. As prior inconsistent statements, these emails have a row to hoe and would provide, at best, minimal assistance. As evidence of bias and motivation to lie, the two emails are absolutely devastating to the complaining witness and two other critical State witnesses.

The Appellee, of course needed to counter the absolutely stinging effect of part of the second email, which stated, in all-caps shouty language:

> . . . DON'T THINK FOR A MINUTE I WOULDNT [sic] LIE ON YOU TO KEEP MY CHILDREN. ALWAYS KEEP THAT IN MIND.
>
> (Doc. 32 at Pg. 145) (emphasis theirs).

The Appellee's response:

> It gives no context about what she would lie about. It does not read, and should not be interpreted to read, as A.R. threatening to lie and name Gaffney as the suspect if he tried to implicate M.
>
> (Doc. 55 at Pg. 19.)

While this suggested interpretation is nice, it misses the point. In its answer brief and response, the Appellee tacitly admits that A.R. "would lie about" something, based

6

on the emails. (Doc. 55 at Pg. 19). The Appellee just wants to beg the question about what A.R. is going to lie about and perhaps how big and expansive the lie is going to be. However, we should not be the ones attempting to interpret how much A.R. is going to lie; the Appellee already having tacitly conceded that, based on the emails, A.R. is going to lie. The person or persons who should be doing the interpreting of this statement is not this Court, but the trial court when it conducts a full 3.850 evidentiary hearing on remand. The way this statement gets interpreted and placed into context is at an evidentiary hearing, where witnesses can be called to testify about what they said, and what they meant by it. At that evidentiary hearing, other folks would also be allowed to testify about actions by A.R., M., the complaining witness, and perhaps others that could also give context and depth to the statements. In other words, if we all need to figure out how A.R. is going to "lie on" Mr. Gaffney (and perhaps has already done so), then the best way to do that is by an evidentiary hearing. Indeed, that is the only way it can happen.

By arguing this statement needs to be interpreted and placed into context, the Appellee has basically admitted that the trial court should have referred this issue for a 3.850 evidentiary hearing. The State has no more idea what was in the heads of A.R., M., or the complaining witness, or how they planned to "lie on" Mr. Gaffney, as the postman or guy across the street looking at the appellate court building. Their

7

assessment contained in their answer brief is an exercise in sheer speculation. It is certainly not evidence deduced from the record that conclusively refutes Mr. Gaffney's claims: the standard required to grant summary denial and deny an evidentiary hearing.

If anything, the rebranding attempt and interesting justification for the worst part of the emails really underscores Mr. Gaffney's unreasonableness arguments. All through this process, the state courts, the District Court, and even the Appellee really do not want to address the emails as a bias/motivation to lie issue because this issue is messy and inconvenient. As previously stated, one really cannot legally refute Mr. Gaffney's bias/motivation to lie argument, especially when the last of the two emails at issue clearly states:

> . . . DON'T THINK FOR A MINUTE I WOULDNT [sic] LIE ON YOU TO KEEP MY CHILDREN. ALWAYS KEEP THAT IN MIND.
>
> (Doc. 32 at Pg. 145) (emphasis theirs).

Since the emails were never entered or proffered into evidence at trial, it is also next to impossible to conclusively refute, using specific record references, that the emails would have had absolutely no influence on the jury verdict. That is the nature of bias evidence and its devastating effect on witnesses. As such, it was patently unreasonable to summarily deny an evidentiary hearing on the bias issue. The fact

the State Court, the District Court, and the Appellee seem to spend so much time deftly avoiding the issues presented by the bias/motivation to lie argument lends all the more credence to the fact this issue cannot be given short shrift and is not the subject of summary disposition.

# CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Federal Rule of Appellate Procedure 32(a)(5), (a)(6), (a)(7)(A) and (a)(7)(B)(i) that the font used in this brief is Times New Roman, 14 point, and the word count is approximately 2,436 words.

# CERTIFICATE OF SERVICE

I certify that, on December 4, 2023, a true copy hereof was furnished to: Allison Leigh Morris, Assistant Attorney General and counsel for the Appellee, through the CM/ECF system; and, on the same date, four paper copies hereof were furnished to this Court by US Mail.

/s/ Christopher Desrochers
Christopher Desrochers
Christopher A. Desrochers, P.L.
2504 Ave. G NW
Winter Haven, FL 33880
(863) 299-8309
Fla. Bar #0948977
Designated Email Address: cadlawfirm@hotmail.com
Appointed Counsel for Appellant, Gregory Gaffney.